Judge Owsley
delivered the Opinion of the Court.
This was an action of assumpsit, brought in the circuit court by Surlott.
The declaration contains two counts, each of which is for money paid, laid out and advanced, by Surlott, for the use of Beddow, and at Ids special instance and request,
Btddow filed a special plea, alleging'that both *110 counts in the declaration are for one and the same thing, and stating, that previous to the supposed assumpsits in the declaration alleged, he Beddow) was indebted to a certain Archibald Shanks in the sum of g-, due by note; that upon that demand, Shanks brought suit against him, in the Lincoln circuit court, and finally recovered judgment therefor ; that about the time the judgment was recovered by Shanks, it was proposed by Surlott, that he, .Beddow, for the purpose of preventing his property from being taken to satisfy Shanks’ debt, should execute to Surlott a bill of sale for all of bis negroes ; and that accordingly, to effect that purpose, and without any other consideration, Beddow executed a bill of sale for his negroes to Surlott, The plea further alleges, that Shanks, not regarding the bill of sale, afterwards caused an execution to issue upon his judgment, and had the same levied upon the negroes mentioned in the bill of sale, and upon inquiry before ajury, raised by the sheriff, to enquire into the right of property in the negroes, the bill of sale was found by the jury to be fraudulent, and the, negroes subject to the execution; that Beddow then tendered and entered into a replevin bond, with Stiríott and Mordicad his sureties, for the debt of Shanks, and the negroes were reslored to him by the sheriff 5 and that after the replevin bond became payable, Shanks caused another execution to issue thereon against the estate of Beddow, Surlott am! Mordicad § and that in virtue thereof, the sheriff seized upon one of the negrqcs mentioned in the bill of sale to Surlott, ami sold the same for the sum of ¡8-, and applied the sale money to the satisfaction of Shanks’ execution. This 5 pm, the pica qvers, constitutes the demand of Surlott, contained in bis declaration, and that it is founded upon no other consideration than that of the fraudulent bill of saic by Beddow to Surlott, as aforesaid,
'in>pi¡c.¡ii¡on it Surlott.
Surlott replied, admitting the execution of the replcvin bond by Beddow, with Surlott and Morehead his sureties, to secure Shanks’ debt, and alleging that a. ferifacias issued upon that bond against their estate, and was levied upon the negro boy mentioned in the plea, which had been previously copveycd *111 by Beddew to Surlott, and the possession thereof delivered to Surlott, which negro, whilst fha property of Surlott, was afterwards sold by the sheriff, under the said execution, for the sum of five hundred dollars ; and that the said Surlott, on the day of sale aforesaid, did pay over to the sheriff,‘as surety for Beddow, the further sum of two hundred and nine dollars and fifty cents, the balance of the amount of Shanks’ execution, both of which sums were received by the sheriff in discharge of the a-ti)ount due Shanks, under his replevin bond and execution, &c.
Rejoinder by Beddow.
Jury, vcrclici andjuilgmeni. fur Surlott.
One to whom debtor cli;poses of his property to defraud his creditors, which is net withstanding seized anti sold b}- thorn, cannot recover of the debtorIhe value of tin property sc> subject'd..
Beddow rejoined by denying that the negro was in the possession of, or belonged to Surlott, when he was taken by the sheriff in execution, and alleging that he was then the property of Beddow, and as his property, taken by the sheriff and s.old to satisfy the debt of Shanks, &c. The rejoinder concluded by tendering an Issue to the country, which was joined by Surlott.'
Upon the trial of this issue, the jury returned a verdict of 25209 SO for Surlott, and judgment was thereupon rendered by the court against Beddow.
To reverse that judgment, Surlott has prosecuted this writ of error.
Whether we test this case by the precise arid technical rules which govern pleadings in actions at law, or consider it with an eye to the justice and equity of the case, the result will he equally unfavor able to the right of burlott to a reversal of the judgment.
Assuming the allegations of Beddow’s plea to he true, it is perfectly clear Surlott cannot be entitled to recover the price for which the negro was sold under the execution of Shanks; for although the negro is alleged to have been transferred by Beddow to Suvjott before the sale of the sheriff, the transfer is stated to have been made with the, intent to defraud Shanks, who was a creditor of Beddow, and in equity and good conscience, Surlott cannot have derived, under that transfer, any right to indemnity against the execution of Shanks. The demand asserted by Surlott for the price for which, flie negro sold under the execution, must, therefore., *112 be founded in the fraudulent transfer, and upon well settled principles, cannot be sustained in the equitable action of assumpsit, which admits of any and every defence that goes to show that in moral justice he ought not to recover.
That a special plea amoanUto the general issue, waá an objection on special deniuri’crcbut now, by the act of 1811, 2 Dig. L. K. 262, there can bo, no :;uch objection-
B.epKeation doomed iuVufficieni,
But admitting the facts alleged in the plea to be such as might defeat a recovery by Surlott for the price of the negro, it was contended, that instead of pleading specially, Beddow ought to have employed those facts in defence, upon the general issue. It would, no doubt, have been competent for Beddow to have introduced evidence of the facts alleged in his plea, upon the trial of the general issue ; and, generally speaking, á defendant was not, at common law, permitted to plead specially, matter which might be proved on the genera1 issue. It was not, however, because the facts, in point of law, were insufficient to bar the action, that the defendant was not allowed to plead the matter specially ; but be was forbid doing so by an artificial and technical rule, of the common law. Though inadmissible, a special pica of that sort was good, after verdict. The objection went only to form, and was unavailing, except by special demurrer. But in this country, we have a statute doing away objections to the form of pleading, and nothing is now an available objection to a plea to the merits, which, prior to that statute, formed a cause of special demurrer only.
The allegations of Beddow’s pica must, therefore, be admitted to be sufficient in point of law, to bar the action, and unless avoided by the replication of Surlott, wo cannot consistently with the strict rules of pleading, interfere, for the purpose of arresting the judgment, at the instance of Surlott.
Does the replication, then, contain sufficient matter to avoid the legal effect of Beddow’s plea? We think not. From the remarks which have been already made upon the plea, it will be perceived that the gist of Beddow’s defence consists in the fraud alleged to have, been committed in the transfer of the negro to Surlott, and if so, it was unquestionably essential to the validity of Surlott’s replication, that it should have traversed the allegation of fraud, contained in the plea. la that respect, however, *113 the replication is entirely silent; and, of course, it cannot be' admitted to contain sufficient matter in aVoidciiic© oi Inc plcsi*
The party committing pie first fault -niMch led to th'c issue that was tried, (jie jU(igment reversed in -ilÍS sute ?0i quontVrror.
Turner for plaintiff 5 Barry for defendant.
Upon the supposition that the replication of Surlott is insufficient, we might, with propriety, dispense with any further remarks upon the further proceedings in the cause by the court below ; for it would be contrary to the settled doctrine of the law, to reverse the judgment at the instance of Surl'ott, for errors growing out of the trial of the immaterial issue, which was caused by his own fault, in making an insufficient replication. '
But .as tlie record contains all the evidence which was introduced upon the trial, we have taken the trouble to look into the merits of the contest, and we have no hesitation in saying, that, casting aside the influence of technical rules, and regarding the justice of the case only, tfec verdict of the jury is as favorable to Surlott as the evidence will justify.
The judgment must, therefore, he affirmed With costs. .